## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| AMERICAN BUSINESS FINANCIAL | : Case No. 05-10203 (MFW) |
| SERVICES, INC. *et al.,* | : (Jointly Administered) |
| | : |
| Debtors.[1] | : **Objection Date:** **October 28, 2009 at 4:00 p.m.** |
| | : |
| | : **Hearing Date:** **November 4, 2009 at 2:00 p.m.** |

### MOTION OF CHAPTER 7 TRUSTEE FOR ORDER APPROVING SETTLEMENT AGREEMENT AMONG GEORGE L. MILLER, CHAPTER 7 TRUSTEE AND JPMORGAN, BEAR STEARNS, CREDIT SUISSE AND MORGAN STANLEY DEFENDANTS PURSUANT TO FED. R. BANKR. P. 9019

George L. Miller, the Chapter 7 Trustee (the "Trustee") for the estate (the "Bankruptcy Estate") of debtor American Business Financial Services, Inc. files this motion (the "Motion") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), seeking an order approving a settlement agreement defined below as the "Trustee Financial Institution Defendants Settlement Agreement"[2] among George L. Miller, the Chapter 7 Trustee of American Business Financial Services, Inc. and its subsidiaries, Tiger Relocation Company, American Business Credit, Inc., Home American Credit, Inc., American Business Mortgage Services, Inc., and ABFS Consolidated Holdings, Inc. (collectively, "ABFS" or the "Debtors"),

---

[1] American Business Financial Services, Inc, Case No. 05-10203, Tiger Relocation Company, Case No. 05-10204, American Business Credit, Inc., Case No. 05-10206, Home American Credit, Inc., Case No. 05-10207, American Business Mortgage Services, Inc., Case No. 05-10208 and ABFS Consolidated Holdings, Inc., Case No. 05-10217 (collectively, the "Debtors").

[2] Unless otherwise expressly defined herein, capitalized terms shall have the meanings ascribed to them in the Trustee Financial Institution Defendants Settlement Agreement.

and the JPMorgan Defendants, the Bear Stearns Defendants, the Credit Suisse Defendants and the Morgan Stanley Defendants (collectively, the "Financial Institution Defendants") and authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the provisions of the Trustee Financial Institution Defendants Settlement Agreement (as defined below). In support of the Motion, the Trustee avers the following:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Trustee has standing to request the relief stated in the Motion. The statutory predicates for the relief sought herein are Section 105 of the Bankruptcy Code and Rule 9019(a) of the Bankruptcy Rules.

## BACKGROUND

2.      On January 21 and January 24, 2005, ABFS filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, with the cases being jointly administered under the caption, *In re: American Business Financial Services, Inc. et al.*, U.S.B.C. D. Del., Case No. 05-10203 (MFW) (the "ABFS Bankruptcy Cases").

3.      On or about May 17, 2005, the Court entered an order converting the ABFS Bankruptcy Cases from cases under Chapter 11 to cases under Chapter 7 of the Bankruptcy Code and the Office of the United States Trustee appointed George L. Miller to serve as Chapter 7 Trustee who continues to serve in such capacity.

4.     On or about July 13, 2006, the Trustee commenced suit against a number of former officers and directors of ABFS (collectively, the "ABFS Defendants"), as well as the Financial Institution Defendants, in the matter of Miller v. Santilli et al., C.C.P. Phila. Cty., July Term, 2006, No. 001225 (the "Santilli Litigation"). In the Santilli Litigation, the Trustee asserted claims against the Financial Institution Defendants for, *inter alia*, fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duties, and conspiracy (collectively, the "Trustee FIDs Claims"), and the Financial Institution Defendants asserted counterclaims against the Trustee in his capacity as representative of the Debtors (the "FIDs' Counterclaims").

5.     The Financial Institution Defendants joined BDO Seidman, LLP ("BDO") as an additional defendant in the Santilli Litigation and asserted cross-claims against the ABFS Defendants.

6.     Prior to the Debtors' bankruptcy filings, Blank Rome LLP ("Blank Rome") served as counsel to ABFS and provided a variety of legal services to ABFS. Blank Rome also represented the Debtors as counsel in the Chapter 11 cases of the ABFS Bankruptcy Cases (i.e., before the proceedings were converted to cases under Chapter 7). On or about February 15, 2008, the Trustee commenced suit against Blank Rome in the Court of Common Pleas of Philadelphia County, Pennsylvania in the matter of Miller v. Blank Rome LLP, C.C.P. Phila. Cty., February Term 2008, No. 002028 (the "Blank Rome Litigation").

7.     On or about November 17, 2008, the Trustee commenced an arbitration proceeding against BDO before the American Arbitration Association, docketed at AAA No. 14-107-Y-01840-08 (the "BDO Arbitration"). The BDO Arbitration remains pending.

8.     On or about September 13, 2006, the Trustee commenced suit against Greenwich Capital Financial Products, Inc. and others (collectively, the "Greenwich Adversary Defendants") in the United States Bankruptcy Court for the District of Delaware in the matter of *In re: George L. Miller, Chapter 7 Trustee v. Greenwich Capital Financial Products, Inc., et al.,* U.S.B.C., D. Del. Adversary No. 06-50826 (the "Greenwich Adversary Action"). The Greenwich Adversary Action remains pending.

9.     On June 10 and June 11, 2008, a mediation was conducted before the Honorable Daniel Weinstein (Ret.), during which the Trustee reached a tentative settlement with the ABFS Defendants (the "Trustee D&O Settlement"). The Trustee D&O Settlement was finalized and approved by the Bankruptcy Court in the ABFS Bankruptcy Cases.

10.    On June 3, 4 and 5, 2009 (the "2009 Mediation"), a mediation was conducted before the Honorable Daniel Weinstein (Ret.), as a result of which the Trustee and Blank Rome reached a settlement of the Trustee's claims against Blank Rome (the "Trustee Blank Rome Settlement"). The Trustee Blank Rome Settlement was approved by the Bankruptcy Court in the ABFS Bankruptcy Cases.

11.    The Financial Institution Defendants participated in the first two days of the 2009 Mediation and at continued sessions on September 17 and 23, 2009, and October 1, 2009, after which the Trustee and the Financial Institution Defendants reached a settlement of the Trustee FIDs Claims and the FIDs' Counterclaims (the "Trustee Financial Institution Defendants Settlement").

## RELIEF REQUESTED

12.     By this Motion, the Trustee seeks an order of this Court approving the settlement agreement with the Financial Institution Defendants, which is attached hereto and incorporated herein by reference as Exhibit "A" (the "Trustee Financial Institution Defendants Settlement Agreement"), authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the terms and provisions of the Trustee Financial Institution Defendants Settlement Agreement, and providing that the Bankruptcy Court retain jurisdiction to enforce the Trustee Financial Institution Defendants Settlement Agreement.

## THE SETTLEMENT

13.     The complete terms and conditions of the Trustee Financial Institution Defendants Settlement are more fully set forth in the Trustee Financial Institution Defendants Settlement Agreement (Exhibit "A") and should be referred to in their entirety. Salient provisions of the Trustee Financial Institution Defendants Settlement Agreement include *inter alia* the following:

(a)     The Financial Institution Defendants shall pay to the Trustee the sum of One Hundred Million Dollars ($100,000,000.00) (the "Trustee Settlement Proceeds"), with payments to be made as follows: JPMorgan/Bear Stearns Defendants, $55,000,000.00; Credit Suisse Defendants, $37,500,000.00; and, Morgan Stanley Defendants, $7,500,000.00.

(b)     Payment Of Trustee Settlement Proceeds.

(i)     The Trustee Settlement Proceeds shall be due and payable to the Trustee within ten (10) business days following the later of: (a) the execution of the Trustee Financial Institution Defendants Settlement Agreement; (b) the Approval Order having become Final, Non-appealable; or (c) the receipt by the Financial Institution Defendants of adequate payment instructions by wire and check, including

payee name and taxpayer identification number(s) and appropriate tax documentation.

(ii) In the event that the Bankruptcy Court in the ABFS Bankruptcy Cases refuses to enter an Approval Order or if the Approval Order does not become Final, Non-appealable: (a) the Parties shall be restored to their respective positions in the Santilli Litigation as of October 6, 2009, with all of their respective claims and defenses preserved as they existed on that date; (b) the terms and provisions of the Trustee Financial Institution Defendants Settlement Agreement shall be null and void and shall have no further force or effect with respect to the Parties, and neither the existence nor the terms of the Trustee Financial Institution Defendants Settlement Agreement shall be used in any litigation or in any other action or proceeding for any purpose; and (c) any judgment or order entered by any court in accordance with the terms of the Trustee Financial Institution Defendants Settlement Agreement shall be treated as vacated, nunc pro tunc.

(c) <u>No Admission Of Liability.</u>  The Financial Institution Defendants have expressly denied and continue to deny all allegations of any wrongdoing or liability against them whatsoever arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, by the Trustee.

(d) Upon payment in full of the Trustee Settlement Proceeds, and subject to the JPMorgan Carve Out (defined below), the Trustee, in his capacity as trustee and on behalf of the Debtors, any of their successors and assigns and any other person claiming (now or in the future) through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Financial Institution Defendants, each of their respective parents, subsidiaries, affiliates, agents, servants, employees, officers, directors, counsel in the Santilli Litigation, and their predecessors, successors, and assigns of all such parties (but only in said parties' capacities as such)(collectively, the "FIDs Releasees") of and from any and all actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities, of any and every kind, character, nature and/or

description whatsoever, whether matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, including, without limitation, claims for fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty, "deepening of the insolvency," and/or conspiracy, or for costs, expenses and attorneys' fees (including, without limitation, costs, expenses and attorneys' fees incurred in connection with this Agreement and the settlement of the Santilli Litigation), or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Santilli Litigation, or any other forum or proceeding of any kind against the FIDs Releasees (or any of them) which arise out of, are based upon or relate to, or are in connection with the Financial Institution Defendants' transactions or dealings with and/or relationships to the Trustee (but only in his capacity as Trustee of the Debtors), or the Debtors, including but not limited to any such actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities arising out of, based upon or relating to: (i) the Santilli Litigation; (ii) the Trustee FIDs Claims; (iii) the ABFS Bankruptcy Cases; (iv) the Greenwich Adversary Action; (v) the BDO Arbitration; and/or (vi) any of the facts, claims, transactions, events, occurrences, acts, disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action, counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Santilli Litigation, the ABFS Bankruptcy Cases and/or any other proceeding of any kind. Any claims between the Trustee and the JPMorgan Defendants for, with respect to or arising out of funds held on deposit, reserve, or in escrow in accounts maintained with or for the benefit of the JPMorgan Defendants (the "JPMorgan Carve Out"), including but not limited to the following accounts:

American Business Financial Services, Inc. account nos. xxxxx7156 and xxxxx7032, American Business Credit, Inc. account nos. xxxxx8249 and xxxxx8587, and the Nonrecoverable Advance Escrow Account no. xxxxxxxxxxx9499, shall be carved out from any release and shall not be settled, released or discharged.

(e)    <u>Pro Rata Nature of Release.</u>

(i)    The release for the benefit of the FIDs Releasees is intended and shall be construed and treated in accordance with the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. §§ 8321, *et seq.* as a pro rata release, such that: (a) the Trustee is releasing only the FIDs Releasees and no one else; (b) the Trustee reserves and preserves in full all of his claims and actions against all other individuals and entities, including but not limited to the Trustee's claims and actions against BDO and the Greenwich Adversary Defendants as now or hereafter asserted in the Greenwich Adversary Action, the BDO Arbitration, or in any other action or proceeding; (c) the Trustee reserves the option and right to make claims against any and every other person or entity, including but not limited to BDO and the Greenwich Adversary Defendants, and to assert that said other persons or entities, and not the FIDs Releasees, are liable to the Trustee and the Debtors for the events, matters and damages alleged by the Trustee in the Santilli Litigation, the BDO Arbitration, the Greenwich Adversary Action or in any other action or proceeding; (d) the intent of this release is to relieve the FIDs Releasees from any liability for contribution or indemnification (other than contractual indemnification) that may arise out of any claim asserted by the Trustee against a party or parties other than the FIDs Releasees; and (e) the Trustee shall be entitled to recover in full on account of any/all judgments or awards entered against non-settling parties, subject only to the potential reduction as provided below.

(ii)    In the event that the Trustee obtains a judgment or judgments against BDO, the Greenwich

Adversary Defendants and/or any other person or entity not being released by the terms of this release in the BDO Arbitration, the Greenwich Adversary Action or in any other action or proceeding (collectively, the "Judgments"), this release shall not discharge, prejudice, bar, reduce or in any way impair the Trustee's right to collect in full all such Judgments, unless any FIDs Releasee is judicially determined to be a joint tortfeasor, sharing joint and several liability for such Judgments, in which event, conditioned upon the Financial Institution Defendants' compliance with its obligations under Section 4.5 of the Agreement, the Trustee's recovery on such Judgments shall be reduced by the pro rata share of damages, if any, attributable to any FIDs Releasee, such that the FIDs Releasees shall in no event be required to pay any sum beyond that set forth in this Agreement, regardless of whether the FIDs Releasees, or any of them, are determined to be joint tortfeasors or are otherwise found liable. If it should be adjudicated in the Greenwich Adversary Action or in any other action or proceeding that any FIDs Releasee was jointly liable with others in such action, in order to hold any FIDs Releasee harmless, the Trustee will (a) satisfy that portion of any decree or award in which there is such finding or adjudication involving any FIDs Releasee on its behalf and to the extent of its pro rata share of any liability, if it is held that there is any such liability, and (b) consistent with Section 4.5 of the Agreement, indemnify, defend and hold harmless the FIDs Releasees for and against liability on account of any judgment, decree or award entered against it/them for contribution or indemnification (other than contractual indemnification) as a joint tortfeasor.

(iii)    In the event that one or more claims is/are made against the FIDs Releasees (or any of them) for contribution or indemnification arising out of a FIDs Releasee's alleged status as a joint tortfeasor in connection with a claim asserted by the Trustee in the Greenwich Adversary Action,

BDO Arbitration, or in any other action or proceeding (collectively, the "FIDs Contribution Claims"): (a) the Financial Institution Defendants shall reserve the option to either (1) select counsel to represent the Financial Institution Defendants, in which event the Financial Institution Defendants shall be required to defend such FIDs Contribution Claims at their/its sole cost and expense, and at no cost or expense to the Trustee or the Debtors for attorneys' fees, expert fees or other costs and expenses in connection with such defense or (2) tender the defense to the Trustee, in which event the Trustee shall accept such tender, select counsel (subject to the Financial Institution Defendants' right to object to the selection in the event of a material conflict of interest) and control the defense of such FIDs Contribution Claims on behalf of the FIDs Releasees (with the Financial Institution Defendants being required to cooperate fully with reasonable requests by the Trustee without being compensated by the Trustee or the Debtors in connection with any such cooperation), with the Trustee on behalf of the Debtors rather than the Financial Institution Defendants being responsible for the attorneys' fees, expert fees or other costs and expenses in connection with such defense; (b) the Financial Institution Defendants shall not admit liability, nor settle any such FIDs Contribution Claims without the prior written consent of the Trustee, which consent may be conditioned, delayed or withheld at the Trustee's sole discretion; and, (c) The Trustee shall not, on the FIDs' behalf, settle any such FIDs Contribution Claims unless he will be satisfying such claims in full. Any cooperation obligation set forth herein shall take place upon reasonable notice and at a time and place that is mutually convenient for the Parties and their counsel, and will not interfere with the normal business hours and responsibilities of those individuals. It is agreed that cooperation by any such person, other than his/her testimony at depositions, hearings, and trials, shall be limited to no more than ten hours. The Trustee

agrees to avoid imposing unreasonable burden and expense on the FIDs.

(iv)    In connection with any future settlement by the Trustee of the Greenwich Adversary Action, the BDO Arbitration and/or any other action in which claims for contribution as a joint tortfeasor or indemnification (other than an alleged right to contractual indemnification) have been or may be asserted against the Financial Institution Defendants, the Trustee will obtain as a condition of any such settlement a release for the benefit of the Financial Institution Defendants, releasing and extinguishing any claims of the settling parties to recover from the FIDs Releasees (or any of them) any portion of the settlement proceeds paid by them to the Trustee or to otherwise seek or obtain indemnification and/or contribution from the FIDs Releasees in connection with such settlement.

(f)    Upon the Approval Order becoming Final, Non-appealable, the Financial Institution Defendants remise, release, acquit and discharge the Trustee and the Debtors, and their estates, heirs, personal representatives, attorneys, accountants and insurers (but only in said other parties' capacities as such)(collectively, the "Trustee Releasees") of and from any and all actions, causes of action, claims, counterclaims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the Financial Institution Defendants have or may have as of the Execution Date against the Trustee Releasees arising out of, based upon or relating to the Financial Institution Defendants' transactions or dealings with and/or relationships to the Debtors and/or the Trustee (but only in his capacity as Trustee of the Debtors), including but not limited to any such actions, causes of action, claims, counterclaims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations or liabilities arising out of, based upon or relating to: (i) the Santilli Litigation; (ii) the Trustee FIDs Claims; (iii) the FIDs' Counterclaims; (iv) the ABFS Bankruptcy Cases; (v) the Greenwich Adversary Action; (v) the BDO Arbitration; and/or (vi) any of the facts, claims, transactions, events, occurrences, acts,

disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action, counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Santilli Litigation, the ABFS Bankruptcy Cases and/or any other proceeding of any kind. Notwithstanding the foregoing: (a) the Chapter 11 administrative claim in the amount of $326,004.81 granted to JPMorgan Chase Bank, N.A. by Order of the United States Bankruptcy Court for the District of Delaware on September 8, 2005 (Docket Entry No. 2126) (the "JPM Administrative Claim") and the rights, if any, of JPMorgan Chase Bank, N.A. to setoff the JPM Administrative Claim against funds held in accounts maintained by the Debtors with JPMorgan Chase Bank, N.A., shall be carved out from the release and shall not be settled, released or discharged under this Agreement; and, (b) Claim No. 4071 in the amount of $193,198.34 in the name of Credit Suisse First Boston (filed on April 28, 2005) shall be carved out from the release and shall not be settled, release or discharged under this Agreement, and the Trustee reserves any and all of his rights to challenge and object to such claim and nothing contained in this Agreement shall constitute an admission by the Trustee of the validity of such claim.

## BASIS FOR RELIEF REQUESTED

14.    This Court has the authority to grant the relief requested in this Motion pursuant to Bankruptcy Code Section 105 and Rule 9019(a) of the Bankruptcy Rules. Bankruptcy Code Section 105(a) provides that "[t]he court may issue any order. . .that is necessary or appropriate to carry out the provisions of this title." Rule 9019 of the Bankruptcy Rules grants the Court authority to approve settlements of claims and controversies after notice and a hearing.[3] Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the

---

[3] Rule 9019(a) of the Bankruptcy Rules provides in pertinent part that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" Myers v. Martin (In re Martin), 91 F. 3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993). In addition, this District has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

15.     Before approving a settlement under Rule 9019(a) of the Bankruptcy Rules, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (*quoting* Louise's, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. In striking this balance, the court should consider the following factors:

(a)     The probability of success in the litigation;

(b)     The complexity, expense and likely duration of the litigation;

(c)     The possibilities of collecting on any judgment which might be obtained;

(d)     All other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and

(e)     Whether the proposed compromise is fair and equitable to the debtors, their creditors, and other parties in interest.

Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-425 (1968). See also Martin, 91 F.3d at 393. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely

rewards of litigation." TMT Trailer Ferry, 390 U.S. at 425. The TMT rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶ 9019.2, 9019-4 (15th ed.), *quoting* In re Drexel Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991). See also, Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 822 (1983).

16.     In making the decision to enter into the Trustee Financial Institution Defendants Settlement Agreement, the Trustee has considered among other factors: (i) the risks and expenses of protracted litigation; (ii) the need and benefit of resolving litigation in an expeditious manner given that the creditors of the Bankruptcy Estate are generally individuals of advanced age; (iii) the fact that the Trustee Settlement Proceeds represent a substantial recovery in connection with litigation against former underwriters and lenders of the Debtors; and, (iv) the evidence obtained during discovery.

17.     The Trustee also believes that the Trustee Financial Institution Defendants Settlement Agreement is in the best interest of the Bankruptcy Estate because it provides a substantial recovery to the Estate and permits the Trustee to continue to assert his claims against others, including the Debtors' former auditors and accountants, BDO, and the Greenwich Adversary Defendants.

18.     The Trustee respectfully submits that all of the foregoing factors reflect that the Trustee Financial Institution Defendants Settlement Agreement is a fair and equitable settlement which meets or exceeds the required range of reasonableness and should be approved by this

Bankruptcy Court as being in the best interest of the Bankruptcy Estate and the Debtors' creditors.

## NOTICE

19.     Notice of this Motion has been given to: (a) Counsel to the Debtor, (b) the United States Trustee, (c)  Counsel to Wells Fargo Bank N.A. as Indenture Trustee, (d) Counsel to Law Debenture Trust Company of New York as Indenture Trustee, (e) Counsel to Greenwich Capital Financial Products, Inc., (f) Counsel to the ABFS Defendants, (g) Counsel to BDO, (h) counsel to Blank Rome, (i) Counsel to the Financial Institution Defendants, (j) Debtors' twenty largest unsecured creditors, and (k) all parties in interest having requested notice to date pursuant to Rule 2002 (the "Service Parties").  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

20.     Pursuant to Local District Court Rule 7.1.2(a), incorporated by reference into the Local Rules of the Bankruptcy Court, and because there are no novel issues of law presented in this Motion, the Trustee waives his right to file a brief in support of this Motion and the legal argument contained herein shall be considered in lieu of the opening brief.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order in the form attached hereto approving the Trustee Financial Institution Defendants Settlement Agreement (Exhibit "A"), authorizing the Trustee to take any and all actions necessary or appropriate to implement the terms and provisions of the Trustee Financial Institution Defendants Settlement Agreement, and providing that the Bankruptcy Court retain jurisdiction to enforce the Trustee Financial Institution Defendants Settlement Agreement.

Date:   October 9, 2009
        Wilmington, DE

                                    **COZEN O'CONNOR**

By:     /s/ John T. Carroll, III
        John T. Carroll, III (DE No. 4060)
        1201 North Market Street
        Suite 1400
        Wilmington, DE  19801
        302-295-2028
        302-295-2013 Fax No.

        **KAUFMAN, COREN & RESS, P.C.**
        Steven M. Coren (*Pro Hac Vice*)
        John W. Morris (*Pro Hac Vice*)
        1717 Arch Street, Suite 3710
        Philadelphia, PA 19103
        215-735-8700
        215-735-5170 Fax

        **OBERMAYER REBMANN**
        **MAXWELL & HIPPEL LLP**
        Joseph P. Dougher (*Pro Hac Vice*)
        Lawrence T. Tabas (*Pro Hac Vice*)
        3 Mill Road, Suite 306 A
        Wilmington, DE 19806
        302-465-8154
        302-658-8051 Fax

        **Counsel for the Chapter 7 Trustee,**
        **George L. Miller**