# EXHIBIT "A"

<table>
<tr>
<td>

George L. Miller, Chapter 7 Trustee of the bankruptcy estates of American Business Financial Services, Inc. and subsidiaries,

Plaintiff,

v.

Estate of Anthony J. Santilli, Deceased, et al.,

Defendants,

and

BDO Seidman, LLP,

Additional Defendant.

</td>
<td>

COURT OF COMMON PLEAS PHILADELPHIA COUNTY, PENNSYLVANIA

July Term, 2006

No. 001225

CIVIL ACTION – LAW

<u>JURY TRIAL DEMANDED</u>

</td>
</tr>
</table>

## <u>SETTLEMENT AGREEMENT</u>

THIS SETTLEMENT AGREEMENT ("Agreement") is entered into this 7th day of October, 2009 (the "Execution Date"), by and among Plaintiff, George L. Miller, the Chapter 7 Trustee ("Miller" or the "Trustee") of American Business Financial Services, Inc. and its subsidiaries, Tiger Relocation Company, American Business Credit, Inc., Home American Credit, Inc., American Business Mortgage Services, Inc., and ABFS Consolidated Holdings, Inc. (collectively, "ABFS" or the "Debtors"), and Defendants, JPMorgan Chase Bank, N.A. (sued herein as JPMorgan Chase Bank), J.P. Morgan Securities Inc. (sued herein as J.P. Morgan Securities, Inc.), JPMorgan Chase & Co. (collectively, the "JPMorgan Defendants"), Credit Suisse (USA), Inc., Credit Suisse First Boston Mortgage Securities Corp., Credit Suisse First Boston Mortgage Capital, LLC (collectively, the "Credit Suisse Defendants"), Bear, Stearns & Co. Inc. (sued herein as Bear, Stearns & Co., Inc.), Bear Stearns Financial Products Inc., Bear Stearns Asset Backed Securities, Inc. (collectively, the "Bear Stearns Defendants"), and Morgan

-1-

Stanley & Co., Incorporated, Morgan Stanley Dean Witter & Co., Morgan Stanley ABS Capital I, Inc., and Morgan Stanley Mortgage Capital, Inc. (collectively, the "Morgan Stanley Defendants") (the JPMorgan Defendants, the Credit Suisse Defendants, the Bear Stearns Defendants and the Morgan Stanley Defendants are referred to collectively in this Agreement as the "Financial Institution Defendants" or the "FIDs." The Trustee and the Financial Institution Defendants are referred to collectively as the "Parties.")

## BACKGROUND

A.     On January 21 and January 24, 2005, ABFS filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, with the cases being jointly administered under the caption, *In re: American Business Financial Services, Inc.*, *et al.*, U.S.B.C. D. Del., Case No. 05-10203 (MFW) (the "ABFS Bankruptcy Cases"). On May 17, 2005, the ABFS Bankruptcy Cases were converted to cases under Chapter 7 of the Bankruptcy Code, and Miller was appointed as Trustee of the ABFS bankruptcy estates;

B.     On or about July 13, 2006, the Trustee commenced suit against a number of former officers and directors of ABFS (collectively, the "ABFS Defendants"), as well as the Financial Institution Defendants, in the matter of Miller v. Santilli et al., C.C.P. Phila. Cty., July Term, 2006, No. 001225 (the "Santilli Litigation"). In the Santilli Litigation, the Trustee asserted claims against the Financial Institution Defendants for, *inter alia*, fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duties, and conspiracy (collectively, the "Trustee FIDs Claims"), and the Financial Institution Defendants asserted counterclaims against the Trustee in his capacity as representative of the Debtors (the "FIDs' Counterclaims");

C.     The Financial Institution Defendants joined BDO Seidman, LLP ("BDO") as an

-2-

additional defendant in the Santilli Litigation and asserted cross-claims against the ABFS Defendants;

D.      Prior to the Debtors' bankruptcy filings, Blank Rome LLP ("Blank Rome") served as counsel to ABFS and provided a variety of legal services to ABFS. Blank Rome also represented the Debtors as counsel in the Chapter 11 cases of the ABFS Bankruptcy Cases (i.e., before the proceedings were converted to cases under Chapter 7). On or about February 15, 2008, the Trustee commenced suit against Blank Rome in the Court of Common Pleas of Philadelphia County, Pennsylvania in the matter of <u>Miller v. Blank Rome LLP</u>, C.C.P. Phila. Cty., February Term 2008, No. 002028 (the "Blank Rome Litigation");

E.      On or about November 17, 2008, the Trustee commenced an arbitration against BDO before the American Arbitration Association, docketed at AAA No. 14-107-Y-01840-08 (the "BDO Arbitration");

F.      On or about September 13, 2006, the Trustee commenced suit against Greenwich Capital Financial Products, Inc. and others (collectively, the "Greenwich Adversary Defendants") in the United States Bankruptcy Court for the District of Delaware in the matter of *In re: George L. Miller, Chapter 7 Trustee v. Greenwich Capital Financial Products, Inc., et al.,* U.S.B.C., D. Del. Adversary No. 06-50826 (the "Greenwich Adversary Action");

G.      On June 10 and June 11, 2008, a mediation was conducted before the Honorable Daniel Weinstein (Ret.), during which the Trustee reached a tentative settlement with the ABFS Defendants (the "Trustee D&O Settlement"). The Trustee D&O Settlement was finalized and approved by the Bankruptcy Court in the ABFS Bankruptcy Cases;

H.      On June 3, and 4, 2009 (the "2009 Mediation"), a mediation was conducted before the Honorable Daniel Weinstein (Ret.), as a result of which the Trustee and Blank Rome

reached a settlement of the Trustee's claims against Blank Rome (the "Trustee Blank Rome Settlement"). The Trustee Blank Rome Settlement was approved by the Bankruptcy Court in the ABFS Bankruptcy Cases;

I.     The Financial Institution Defendants participated in the 2009 Mediation and at continued sessions on September 17 and 23, 2009, and October 1, 2009, after which the Trustee and the Financial Institution Defendants reached a settlement of the Trustee FIDs Claims and the FIDs' Counterclaims (the "Trustee Financial Institution Defendants Settlement"); and

J.     By this Agreement, the Trustee and the Financial Institution Defendants hereby set forth, confirm and memorialize the Trustee Financial Institution Defendants Settlement.

NOW THEREFORE, in consideration of the promises and mutual covenants and agreements contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound, hereby covenant and agree as follows:

### 1.     Trustee Financial Institution Defendants Settlement Subject to Court Approval.

1.1     The enforceability of this Agreement shall be subject to and conditioned upon the approval of this Agreement by Final, Non-appealable order of the Bankruptcy Court in the ABFS Bankruptcy Cases. The Trustee shall use his best efforts to seek and obtain final judicial approval of this Agreement as promptly as possible. The Financial Institution Defendants shall cooperate with the Trustee in his effort to obtain court approval of this Agreement.

1.2     A motion to approve this Agreement, asking the Bankruptcy Court to retain jurisdiction to enforce this Agreement, shall promptly be filed by the Trustee in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. An order approving this Agreement without any changes not acceptable to the Parties (the "Approval Order") shall be deemed

-4-

"Final, Non-appealable" upon the expiration of ten (10) days following the entry of the Approval Order unless an appeal from such Approval Order has been taken, in which event the Approval Order shall be deemed "Final, Non-appealable" if and when both (a) the appeal has been finally adjudicated or dismissed and is not subject to any further judicial review and (b) the Approval Order remains unchanged or has been changed only in a manner that is acceptable to the Parties. In the event of an appeal of the Approval Order, the Trustee shall use his best efforts to seek a dismissal of the appeal or an affirmance of the Approval Order.

## 2. No Admission of Liability.

2.1     The Parties intend this Agreement to be a final and complete resolution of all claims and potential claims among them as more fully described below. The Financial Institution Defendants do not admit any liability, nor do they admit any wrongdoing, however described, including, without limitation, any violations of federal or state laws, any fraud, any aiding and abetting fraud, any aiding and abetting breaches of fiduciary duties, any conspiracy, or any other claim, whether in contract or tort, nor do they admit any causation or damages or standing as to any such claims, and the Financial Institution Defendants expressly deny any such wrongdoing or liability, including any causation, damages or standing. Nothing herein contained shall constitute an adjudication or finding on the merits as to the Trustee FIDs Claims, and shall not be deemed to be, intended to be or construed as an admission of liability in any way on the part of the Financial Institution Defendants, or any of them, or any evidence of the truth of any fact alleged or the validity of any claims that have been or could have been asserted.

2.2     Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement or leading to its formation: (a) may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim, or of any wrongdoing or

-5-

liability of the Financial Institution Defendants, or any of them; (b) may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Financial Institution Defendants, or any of them, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or shall be construed against the Financial Institution Defendants, or any of them, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial. The Financial Institution Defendants, or any of them, may file the Agreement and/or the Approval Order in any action that may be brought against them or it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. Moreover, while neither this Agreement nor any negotiations or proceedings connected with it may be construed, offered or received in evidence in any action or proceeding of any kind as an admission or concession of any liability or wrongdoing or otherwise, they may be offered as necessary to consummate, defend or enforce this Agreement or as otherwise specifically provided in this Agreement.

  2.3  The Financial Institution Defendants have expressly denied and continue to deny all allegations of any wrongdoing or liability against them whatsoever arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, by the Trustee. Nonetheless, the Financial Institution Defendants have concluded that further conduct of the Santilli Litigation would be protracted, expensive and distracting and that it is desirable that the Santilli Litigation be settled. The Financial Institution Defendants also have taken into account the uncertainty and risks inherent in any litigation. The Financial Institution Defendants have, therefore, determined that it is desirable and beneficial that the Santilli Litigation be settled in

the manner and upon the terms and conditions set forth herein.

### 3. <u>Payment Of Settlement Proceeds.</u>

3.1    Subject to the terms of this Agreement and as consideration for the releases

contained in this Agreement, the Financial Institution Defendants shall pay to the Trustee the

sum of One Hundred Million Dollars ($100,000,000.00) (the "Trustee Settlement Proceeds"),

with payments to be made as follows:

| <u>FINANCIAL INSTITUTION DEFENDANT</u> | <u>AMOUNT</u> |
|---|---|
| JPMorgan Defendants/Bear Stearns Defendants | $55,000,000.00 |
| Credit Suisse Defendants | $37,500,000.00 |
| Morgan Stanley Defendants | $ <u>7,500,000.00</u> |
| Total | $100,000,000.00 |

In no event shall any Financial Institution Defendant's liability under this Agreement

exceed its individually allocated amount above and each Financial Institution Defendant shall

receive all benefits of this Agreement upon the timely payment of its individual allocated

amount.

3.2    The Trustee Settlement Proceeds shall be due and payable to the Trustee within

ten (10) business days following the later of: (a) the execution of this Agreement; (b) the

Approval Order having become Final, Non-appealable (as defined in Section 1.2 above), or (c)

the receipt by the Financial Institution Defendants of adequate payment instructions by wire and

check, including payee name and taxpayer identification number(s) and appropriate tax

documentation.

3.3    In the event that the Bankruptcy Court in the ABFS Bankruptcy Cases refuses to

enter an Approval Order or if the Approval Order does not become Final, Non-appealable (as

defined in Section 1.2 above): (a) the Parties shall be restored to their respective positions in the Santilli Litigation as of October 6, 2009, with all of their respective claims and defenses preserved as they existed on that date; (b) the terms and provisions of this Agreement shall be null and void and shall have no further force or effect with respect to the Parties, and neither the existence nor the terms of this Agreement (nor any negotiations preceding this Agreement nor any acts performed pursuant to, or in furtherance of, this Agreement) shall be used in any litigation or in any other action or proceeding for any purpose; and (c) any judgment or order entered by any court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc.

## 4. Pro Rata Release To Financial Institution Defendants.

4.1     Upon payment in full of the Trustee Settlement Proceeds, and subject to the JPMorgan Carve Out (defined below), the Trustee, in his capacity as trustee and on behalf of the Debtors, any of their successors and assigns and any other person claiming (now or in the future) through or on behalf of any of them, remises, relinquishes, acquits, releases and discharges the Financial Institution Defendants, each of their respective parents, subsidiaries, affiliates, agents, servants, employees, officers, directors, counsel in the Santilli Litigation, and their predecessors, successors, and assigns of all such parties (but only in said parties' capacities as such)(collectively, the "FIDs Releasees") of and from any and all actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities, of any and every kind, character, nature and/or description whatsoever, whether matured or unmatured, accrued or unaccrued, known or unknown, suspected or unsuspected,

-8-

contingent or non-contingent, liquidated or unliquidated, choate or inchoate, whether or not asserted, threatened, alleged or litigated, at law, equity or otherwise, including, without limitation, claims for fraud, aiding and abetting fraud, aiding and abetting breaches of fiduciary duty, "deepening of the insolvency," and/or conspiracy, or for costs, expenses and attorneys' fees (including, without limitation, costs, expenses and attorneys' fees incurred in connection with this Agreement and the settlement of the Santilli Litigation), or violations of any federal, state or local statutes, common law, or other laws, rules or regulations, that now exist or heretofore existed, that have been or could have been asserted or alleged in the Santilli Litigation, or any other forum or proceeding of any kind against the FIDs Releasees (or any of them) which arise out of, are based upon or relate to, or are in connection with the Financial Institution Defendants' transactions or dealings with and/or relationships to the Trustee (but only in his capacity as Trustee of the Debtors), or the Debtors, including but not limited to any such actions, causes of action, rights of action, dues, sums of money, accounts, bonds, bills, covenants, contracts, controversies, agreements, promises, preferences, fraudulent conveyances, fraudulent transfers, claims, suits, demands, rights, damages, costs, losses, fees, judgments, variances, executions, debts, obligations and liabilities arising out of, based upon or relating to: (i) the Santilli Litigation; (ii) the Trustee FIDs Claims; (iii) the ABFS Bankruptcy Cases; (iv) the Greenwich Adversary Action; (v) the BDO Arbitration; and/or (vi) any of the facts, claims, transactions, events, occurrences, acts, disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action, counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Santilli Litigation, the ABFS Bankruptcy Cases and/or any other proceeding of any kind.

Notwithstanding anything in this Agreement, any claims between the Trustee and the JPMorgan Defendants for, with respect to or arising out of funds held on deposit, reserve, or in escrow in accounts maintained with or for the benefit of the JPMorgan Defendants (the "JPMorgan Carve Out"), including but not limited to the following accounts: American Business Financial Services, Inc. account nos. xxxxx7156 and xxxxx7032, American Business Credit, Inc. account nos. xxxxx8249 and xxxxx8587, and the Nonrecoverable Advance Escrow Account no. xxxxxxxxxxx9499, shall be carved out from any release and shall not be settled, released or discharged.

4.2     With respect to any and all released claims, the Parties stipulate and agree that they shall be deemed to have, and by operation of the Final, Non-appealable Approval Order shall have, expressly waived the provisions, rights and benefits of any statute, rule or provision which prohibits the release of Unknown Claims, including California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

A Party may hereafter discover facts in addition to or different from those which he, it or they now know or believe to be true with respect to the subject matter of the released claims, but the Parties shall be deemed to have, and by operation of the Final, Non-appealable Approval Order shall have, fully, finally, and forever settled and released any and all claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which exist, or heretofore have existed, upon any theory of law or equity now existing or coming

-10-

into existence in the future, including, but not limited to, conduct which is alleged to be negligent, intentional, with or without malice, or a beach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties shall be deemed by operation of the Final, Non-appealable Approval Order to have acknowledged that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

4.3     The release in this Agreement for the benefit of the FIDs Releasees is intended and shall be construed and treated in accordance with the Uniform Contribution Among Tortfeasors Act, 42 Pa. C.S.A. §§ 8321, *et seq.* as a pro rata release, such that: (a) the Trustee is releasing only the FIDs Releasees and no one else; (b) the Trustee reserves and preserves in full all of his claims and actions against all other individuals and entities, including but not limited to the Trustee's claims and actions against BDO and the Greenwich Adversary Defendants as now or hereafter asserted in the Greenwich Adversary Action, the BDO Arbitration, or in any other action or proceeding; (c) the Trustee reserves the option and right to make claims against any and every other person or entity, including but not limited to BDO and the Greenwich Adversary Defendants, and to assert that said other persons or entities, and not the FIDs Releasees, are liable to the Trustee and the Debtors for the events, matters and damages alleged by the Trustee in the Santilli Litigation, the BDO Arbitration, the Greenwich Adversary Action or in any other action or proceeding; (d) the intent of this release is to relieve the FIDs Releasees from any liability for contribution or indemnification (other than contractual indemnification) that may arise out of any claim asserted by the Trustee against a party or parties other than the FIDsReleasees; and (e) the Trustee shall be entitled to recover in full on account of any/all judgments or awards entered against non-settling parties, subject only to the potential reduction as provided in Section 4.4

below.

4.4     In the event that the Trustee obtains a judgment or judgments against BDO, the Greenwich Adversary Defendants and/or any other person or entity not being released by the terms of this release in the BDO Arbitration, the Greenwich Adversary Action or in any other action or proceeding (collectively, the "Judgments"), this release shall not discharge, prejudice, bar, reduce or in any way impair the Trustee's right to collect in full all such Judgments, unless any FIDs Releasee is judicially determined to be a joint tortfeasor, sharing joint and several liability for such Judgments, in which event, conditioned upon the Financial Institution Defendants' compliance with its obligations under Section 4.5 below, the Trustee's recovery on such Judgments shall be reduced by the pro rata share of damages, if any, attributable to any FIDs Releasee, such that the FIDs Releasees shall in no event be required to pay any sum beyond that set forth in this Agreement, regardless of whether the FIDs Releasees, or any of them, are determined to be joint tortfeasors or are otherwise found liable. If it should be adjudicated in the Greenwich Adversary Action or in any other action or proceeding that any FIDs Releasee was jointly liable with others in such action, in order to hold any FIDs Releasee harmless, the Trustee will (a) satisfy that portion of any decree or award in which there is such finding or adjudication involving any FIDs Releasee on its behalf and to the extent of its pro rata share of any liability, if it is held that there is any such liability, and (b) consistent with Section 4.5 below, indemnify, defend and hold harmless the FIDs Releasees for and against liability on account of any judgment, decree or award entered against it/them for contribution or indemnification (other than contractual indemnification) as a joint tortfeasor.

4.5     In the event that one or more claims is/are made against the FIDs Releasees (or any of them) for contribution or indemnification arising out of a FIDs Releasee's alleged status as a

-12-

joint tortfeasor in connection with a claim asserted by the Trustee in the Greenwich Adversary Action, BDO Arbitration, or in any other action or proceeding (collectively, the "FIDs Contribution Claims"): (a) the Financial Institution Defendants shall reserve the option to either (1) select counsel to represent the Financial Institution Defendants, in which event the Financial Institution Defendants shall be required to defend such FIDs Contribution Claims at their/its sole cost and expense, and at no cost or expense to the Trustee or the Debtors for attorneys' fees, expert fees or other costs and expenses in connection with such defense or (2) tender the defense to the Trustee, in which event the Trustee shall accept such tender, select counsel (subject to the Financial Institution Defendants' right to object to the selection in the event of a material conflict of interest) and control the defense of such FIDs Contribution Claims on behalf of the FIDs Releasees (with the Financial Institution Defendants being required to cooperate fully with reasonable requests by the Trustee without being compensated by the Trustee or the Debtors in connection with any such cooperation), with the Trustee on behalf of the Debtors rather than the Financial Institution Defendants being responsible for the attorneys' fees, expert fees or other costs and expenses in connection with such defense; (b) the Financial Institution Defendants shall not admit liability, nor settle any such FIDs Contribution Claims without the prior written consent of the Trustee, which consent may be conditioned, delayed or withheld at the Trustee's sole discretion; and, (c) The Trustee shall not, on the FIDs' behalf, settle any such FIDs Contribution Claims unless he will be satisfying such claims in full. Any cooperation obligation set forth herein shall take place upon reasonable notice and at a time and place that is mutually convenient for the Parties and their counsel, and will not interfere with the normal business hours and responsibilities of those individuals. It is agreed that cooperation by any such person, other than his/her testimony at depositions, hearings, and trials, shall be limited to no more than ten hours.

The Trustee agrees to avoid imposing unreasonable burden and expense on the FIDs.

4.6    In connection with any future settlement by the Trustee of the Greenwich Adversary Action, the BDO Arbitration and/or any other action in which claims for contribution as a joint tortfeasor or indemnification (other than an alleged right to contractual indemnification) have been or may be asserted against the Financial Institution Defendants, the Trustee will obtain as a condition of any such settlement a release for the benefit of the Financial Institution Defendants, releasing and extinguishing any claims of the settling parties to recover from the FIDs Releasees (or any of them) any portion of the settlement proceeds paid by them to the Trustee or to otherwise seek or obtain indemnification and/or contribution from the FIDs Releasees in connection with such settlement.

## 5.    <u>Waiver and Release of Right of Contribution.</u>

5.1    The Financial Institution Defendants hereby waive and relinquish any/all rights to seek or obtain indemnification or contribution (as alleged joint tortfeasors or otherwise) from the ABFS Defendants, Blank Rome and/or anyone else against whom/which the Trustee has asserted or hereafter may assert claims on behalf of the Debtors including any such alleged claims by the FIDs arising out of, on account of and/or in connection with (a) the Santilli Litigation, (b) the Trustee FIDs Claims and/or (c) the payment by the FIDs of the Trustee Settlement Proceeds. The Financial Institution Defendants hereby remise, release and discharge the ABFS Defendants and Blank Rome for any liability whatsoever arising out of, on account of and/or in connection with (a) the Santilli Litigation, (b) the Trustee FIDs Claims and/or (c) the payment by the FIDs of the Trustee Settlement Proceeds, including any liability or obligation in the nature of contribution or indemnification (as alleged joint tortfeasors or otherwise). Nothing herein shall dismiss, waive, or relinquish any defenses that may be available to the Financial Institution Defendants in

connection with any claim brought by the ABFS Defendants, Blank Rome, and/or anyone else against whom/which the Trustee has asserted or hereafter may assert claims on behalf of the Debtors.

5.2 The Financial Institution Defendants hereby waive and relinquish any/all rights to seek or obtain indemnification or contribution (as alleged joint tortfeasors or otherwise) from each other arising out of, on account of and/or in connection with (a) the Santilli Litigation, (b) the Trustee FIDs Claims and/or (c) the payment by the FIDs of the Trustee Settlement Proceeds. The Financial Institution Defendants hereby remise, release and discharge each other for any liability whatsoever arising out of, on account of and/or in connection with (a) the Santilli Litigation, (b) the Trustee FIDs Claims and/or (c) the payment by the FIDs of the Trustee Settlement Proceeds, including any liability or obligation in the nature of contribution or indemnification (as alleged joint tortfeasors or otherwise).

## 6. Dismissal of Claims in Santilli Litigation and Appeal.

Within five (5) business days of payment in full of the Trustee Settlement Proceeds, (a) the Trustee and the Financial Institution Defendants shall file a praecipe/stipulation to mark the Trustee's claims against the FIDs and the FIDs' counterclaims, cross-claims and third-party claims against the Trustee, the ABFS Defendants and additional defendant BDO settled, discontinued and ended, with prejudice, and (b) the Financial Institution Defendants shall dismiss their appeal to the Superior Court docketed at no. 2334 EDA 2009. The claims of the Trustee against BDO shall remain in deferred status pending the results of the BDO Arbitration (in accordance with the order of Judge Bernstein entered on September 18, 2008 and docketed on September 23, 2008).

## 7. **Release From the Financial Institution Defendants.**

Upon the Approval Order becoming Final, Non-appealable, the Financial Institution Defendants remise, release, acquit and discharge the Trustee and the Debtors, and their estates, heirs, personal representatives, attorneys, accountants and insurers (but only in said other parties' capacities as such)(collectively, the "Trustee Releasees") of and from any and all actions, causes of action, claims, counterclaims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations and liabilities, whether known or unknown, contingent, liquidated or unliquidated, which the Financial Institution Defendants have or may have as of the Execution Date against the Trustee Releasees arising out of, based upon or relating to the Financial Institution Defendants' transactions or dealings with and/or relationships to the Debtors and/or the Trustee (but only in his capacity as Trustee of the Debtors), including but not limited to any such actions, causes of action, claims, counterclaims, suits, demands, rights, damages, costs, losses, judgments, debts, obligations or liabilities arising out of, based upon or relating to: (i) the Santilli Litigation; (ii) the Trustee FIDs Claims; (iii) the FIDs' Counterclaims; (iv) the ABFS Bankruptcy Cases; (v) the Greenwich Adversary Action; (v) the BDO Arbitration; and/or (vi) any of the facts, claims, transactions, events, occurrences, acts, disclosures, statements, representations, misrepresentations, omissions or failures to act, or matters of any kind or nature whatsoever, related directly or indirectly to the subject matters referred to, set forth in, or the facts, causes of action, counts or claims for relief which were, might have been, or could have been, asserted, alleged or litigated in the Santilli Litigation, the ABFS Bankruptcy Cases and/or any other proceeding of any kind.

Notwithstanding the foregoing: (a) the Chapter 11 administrative claim in the amount of $326,004.81 granted to JPMorgan Chase Bank, N.A. by Order of the United States Bankruptcy

Court for the District of Delaware on September 8, 2005 (Docket Entry No. 2126) (the "JPM Administrative Claim") and the rights, if any, of JPMorgan Chase Bank, N.A. to setoff the JPM Administrative Claim against funds held in accounts maintained by the Debtors with JPMorgan Chase Bank, N.A., shall be carved out from the release and shall not be settled, released or discharged under this Agreement; and, (b) Claim No. 4071 in the amount of $193,198.34 in the name of Credit Suisse First Boston (filed on April 28, 2005) shall be carved out from the release and shall not be settled, release or discharged under this Agreement, and the Trustee reserves any and all of his rights to challenge and object to such claim and nothing contained in this Agreement shall constitute an admission by the Trustee of the validity of such claim .

## 8. **Miscellaneous.**

8.1     Incorporation of Background Paragraphs. Background paragraphs A. - J. above are incorporated herein by reference and shall be part of this Agreement and not merely recitals.

8.2     Further Instruments. The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of the Agreement, including executing any further documentation and taking such further action as may be reasonably necessary to further effectuate or carry out the intent of this Agreement.

8.3     Amendment. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

8.4     Integration.   This Agreement constitutes the entire agreement between and among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained

and memorialized herein.

8.5     Counterparts. This Agreement may be executed by facsimile or electronic mail and in counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

8.6     Binding. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

8.7     Choice of Law. This Agreement shall be interpreted, construed, governed and enforced under and in accordance with the substantive laws of the Commonwealth of Pennsylvania (without application of Pennsylvania's conflict/choice of law rules).

8.8     Retention of Jurisdiction; Enforcement of Agreement. The Parties request that this Agreement, upon approval, be incorporated in the Approval Order or otherwise entered as an order of the Bankruptcy Court in the ABFS Bankruptcy Cases. The Parties further agree that the Bankruptcy Court in the ABFS Bankruptcy Cases shall retain exclusive jurisdiction to enforce this Agreement.

8.9     Interpretation/Construction. This Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that this Agreement is the result of arm's-length negotiations between the Parties and that all Parties have contributed substantially and materially to the preparation of this Agreement.

8.10     Authority. All counsel and any other person executing this Agreement and the exhibits hereto warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

        IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day

and year set forth above.

George L. Miller, Chapter 7 Trustee

THE JPMORGAN DEFENDANTS

By: _____
Title: _____

THE CREDIT SUISSE DEFENDANTS

By: _____
Title: _____

THE BEAR STEARNS DEFENDANTS

By: _____
Title: _____

THE MORGAN STANLEY DEFENDANTS

By: _____
Title: _____

G:\Docs\MILLER, GEORGE TRUSTEE\ABFS\SANTILLI\PhilaCCP\SMC Trial Prep\FID Settlement Agreement.global.revised.10-7-09.wpd

JPMORGAN CHASE BANK, N.A.

By: _____
Title: _____

J.P. MORGAN SECURITIES INC.

By: _____
Title: _____

JPMORGAN CHASE & CO.

By: _____
Title: _____

CREDIT SUISSE (USA), INC.

By: _____
Title: _____

CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.

By: _____
Title: _____

CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC

By: _____
Title: _____

BEAR, STEARNS & CO. INC.

By: _____
Title: _____

BEAR STEARNS FINANCIAL PRODUCTS INC.

By: _____
Title: _____

BEAR STEARNS ASSET BACKED SECURITIES, INC.

By: _____
Title: _____

MORGAN STANLEY & CO., INCORPORATED

JPMORGAN CHASE BANK, N.A.

By: _____
Title: _____

J.P. MORGAN SECURITIES INC.

By: _____
Title: _____

JPMORGAN CHASE & CO.

By: _____
Title: _____

CREDIT SUISSE (USA), INC.

By: *Neil Risley*
Title: *Managing Director*

CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP.

By: *A. Adam Loskove*
Title: A. Adam Loskove
Vice President

CREDIT SUISSE FIRST BOSTON MORTGAGE CAPITAL, LLC

By: *A. Adam Loskove*
Title: A. Adam Loskove
Vice President

BEAR, STEARNS & CO. INC.

By: _____
Title: _____

BEAR STEARNS FINANCIAL PRODUCTS INC.

By: _____
Title: _____

BEAR STEARNS ASSET BACKED SECURITIES, INC.

By: _____
Title: _____

MORGAN STANLEY & CO., INCORPORATED

and year set forth above.

THE CREDIT SUISSE DEFENDANTS

By: _____
_____
George L. Miller, Chapter 7 Trustee        Title: _____

THE JPMORGAN DEFENDANTS                    THE BEAR STEARNS DEFENDANTS

By: _____               By: _____
Title: _____            Title: _____

THE MORGAN STANLEY DEFENDANTS

By: _~~/\~~_____
Title: _ATTORNEY FOR MORGAN STANLEY_
                    _DEFENDANTS_

-19-

By: *[signature]*
Title: ATTORNEY FOR MORGAN STANLEY + CO., INCORPORATED

MORGAN STANLEY DEAN WITTER & CO.

By: *[signature]*
Title: ATTORNEY FOR MORGAN STANLEY DEAN WITTER + CO.

MORGAN STANLEY ABS CAPITAL I, INC.

By: *[signature]*
Title: ATTORNEY FOR MORGAN STANLEY ABS CAPITAL I, INC.

MORGAN STANLEY MORTGAGE CAPITAL, INC.

By: *[signature]*
Title: ATTORNEY FOR MORGAN STANLEY MORTGAGE CAPITAL, INC.

G:\Docs\MILLER, GEORGE TRUSTEE\ABFS\SANTILLI\PhilaCCP\SMC Trial Prep\FID Settlement Agreement.global.revised.10-7-09.v2.wpd

-21-